# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **PATRICIA ANN CUNNINGHAM,** | } |
| **Plaintiff,** | } |
| v. | } Case. No.: 2:14-cv-2182-RDP |
| **CAROLYN W. COLVIN, Acting Commissioner of Social Security,** | } |
| **Defendant.** | } |

## MEMORANDUM OPINION

Plaintiff, Patricia Ann Cunningham, brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI. *See* 42 U.S.C. §§ 405(g), 1383(c). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

### I.      Proceedings Below

Plaintiff filed her applications for a period of disability, DIB, and SSI on November 2, 2012, alleging a disability onset date of June 30, 2012. (R. 14, 73). Plaintiff had acquired sufficient quarters of coverage to remain insured through December 31, 2016. (R. 14, 16).

On March 8, 2013, Plaintiff's applications were denied. (R. 14, 107-09). On March 25, 2013, Plaintiff requested an administrative hearing (R. 14, 32, 116), which was held via video before

an Administrative Law Judge ("ALJ") on April 28, 2014. (R. 14, 130, 135, 142). Both Plaintiff and impartial Vocational Expert ("VE") Julia A. Russell testified at the hearing. (R. 14, 63-72, 133).

In the ten page May 27, 2014 decision, the ALJ determined that Plaintiff was not under a "disability," as defined by the Act, at any time through the date of decision. (R. 23). Thereafter, Plaintiff requested review of the ALJ's decision by the Appeals Council. (R. 9). After the Appeals Council denied Plaintiff's request for review (R. 1-3), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

At the time of Plaintiff's alleged onset of disability, she was fifty-eight years old. (R. 34, 171). Plaintiff completed two years of college and has past relevant work as a cashier, demonstrator, and hospital cleaner. (R. 62-63, 244). According to Plaintiff, she has been unable to engage in substantial gainful activity since June 2012, when she became unable to work due to: (1) diabetes; (2) lupus; (3) high blood pressure; (4) arthritis; (5) a torn rotator cuff; and (6) glaucoma. (R. 243).[1]

**II.   ALJ Decision**

Determination of disability under the Social Security Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq*. First, the Commissioner determines whether the claimant is working ("Step One"). Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities ("Step Two"). Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations ("Step Three"). Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work

---

[1] It is essential to note that the argued ground for reversal is rooted in alleged residual effects of an ischemic stroke Plaintiff suffered in 2013. (*See generally* Doc. #8). Plaintiff originally filed for disability benefits in 2012, before the stroke occurred. (R.260).

("Step Four").  The claimant's residual functional capacity consists of what the claimant can do despite his impairment.  Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work ("Step Five").  In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the residual functional capacity are the same as the criteria listed in the Appendix.  If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that he can no longer perform his former employment."  *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted).  Once a claimant shows that he can no longer perform his past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment."  *Id.*

The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2016, (R. 16, No. 1), and that she has not engaged in substantial gainful activity since June 30, 2012  (R. 16, No. 2).  Although the ALJ found that, during the relevant time period, Plaintiff did have the medically determinable impairments of torn rotator cuff, left shoulder and status post two rotator cuff repair operations, characterized as "severe," she nevertheless determined that Plaintiff did not have an impairment or combination of impairments that met or medically equal the criteria of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1.  (R. 17-18, Nos. 3, 4).

Based upon her review of the record, the ALJ concluded that Plaintiff retains the residual functional capacity ("RFC") to perform light work except the claimant is able to lift 15 pounds occasionally and frequently with bilateral upper extremities; can never climb ladders, ropes, or scaffolds; may never reach overhead with the left, non-dominant upper extremity; must avoid all exposure to hazardous moving machinery and unprotected heights; and must avoid concentrated exposure to fumes, gases, and poor ventilation. (R. 19, No. 5). Aided by the testimony of a VE, the ALJ found that Plaintiff could return to her past relevant work as a cashier, demonstrator, and hospital cleaner. (R. 23, No. 6). Thus, the ALJ found that Plaintiff was not under a "disability" from June 30, 2012 through the date of the decision. (R. 23, No. 7).

### III.   Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. (Doc. # 8 at 6). Specifically, "Plaintiff believes that she has an additional severe impairment, with resulting functional limitations, which were [overlooked] by the administrative law judge." (Doc. #8 at 3).

### IV.   Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court

may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.    Discussion**

For the reasons outlined below, the court finds that the ALJ properly discounted Plaintiff's subjective complaints and appropriately calculated Plaintiff's residual functional capacity when making the decision to deny benefits. The decision of the ALJ is supported by substantial evidence and due to be affirmed for the reasons outlined below.

**A.    Analysis of the Severity of Residual Effects from Stroke**

Plaintiff's central challenge concerns the ALJ's finding that Plaintiff has *only* one severe impairment: torn rotator cuff, left shoulder; status post two rotator cuff repair operations. (Doc. #8 at 3, 4). The ALJ did not find Plaintiff's residual effects from her stroke to be severe. (R. 16). Plaintiff argues that this was error and that her ischemic stroke and its effects, as well as her diabetes,

neuropathy, and arthritic pain are also severe within the meaning of the Guidelines. (Doc. #8 at 10). She contends that the ALJ failed to consider these impairments, failed to discuss them in the opinion, and failed to question the VE about them. (Doc. #8 at 10).

Here, Plaintiff's challenge to the ALJ's finding at Step Two fails to account for the ALJ's affirmative finding that Plaintiff did, in fact, meet her burden to demonstrate that her impairment of torn rotator cuff is "severe." (R. 16, No. 3). Despite that favorable ruling, Plaintiff argues that the ALJ's finding was in error because she failed to find that *all* of her alleged impairments meet the threshold of severity. (Doc. # 8 at 8, 10). In a 2014 unpublished opinion, a panel of the Eleventh Circuit rejected that very same argument by opining that it is simply not possible for an ALJ to err at Step Two of his analysis when he finds in favor of a claimant:

> The finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two.

*Freeman v. Commissioner of Social Security*, 593 Fed. Appx. 911, 914 (11th Cir. Nov. 25, 2014) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

But even setting aside the matter of whether the ALJ *could have* erred by finding only one of Plaintiff's alleged impairments to be severe, the true nature of Plaintiff's argument is not a dispute with the ALJ's finding at Step Two. Rather, Plaintiff's true dispute is with the ALJ's failure to credit her testimony regarding her fatigue and memory problems. (Doc. #8 at 11). Whether or not the ALJ finds one or more (even ten) impairments to be "severe" at Step Two is of no moment, as both the third and fourth steps of the sequential analysis require the ALJ to consider all impairments– regardless of whether they meet the second-step definition of "severe." Indeed, when considering

whether a plaintiff's conditions meet or equal one of the listings under Step Three, the ALJ must consider all alleged impairments, alone and in combination.  *See Davis v. Shalala*, 985 F.2d 528, 529 (11th Cir. 1993).  Likewise, when assessing RFC, the ALJ:

> must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

Social Security Ruling 96-8P: "TITLES II AND XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS," 61 Fed. Reg. 34474-34478, 1996 WL 374184, at *5.  Thus, whether an ALJ determines that one or all impairments meet the definition of "severe" has no impact on the ultimate analysis; so long as the ALJ finds just *one* impairment to be severe at Step Two, all of a plaintiff's impairments will be considered in the ALJ's later analysis of the remaining steps.

For both of these reasons, and consistent with the caselaw and regulations interpreting the sequential analysis, the court finds that the ALJ could not - and did not - err at Step Two of the analysis when she found only one of Plaintiff's alleged impairments to be severe.

      **B.**      **Steps Three and Four of the Analysis**

As outlined earlier, Step Three of the sequential evaluation process *directs* a finding of disability if Plaintiff's impairments meet or equal a listed impairment. *See* 20 C.F.R. § 404.1520(d). In other words, the listings set forth conditions that are so severe that, if a listing is met or equaled, a plaintiff is considered disabled without regard to vocational considerations.  If a plaintiff contends that she *meets* a listing, that burden requires that she "present *specific medical findings* that meet the

7

various tests listed under the description of the applicable impairment." *Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir.1986)(emphasis added).  In the alternative, if a plaintiff "contends that [s]he has an impairment which is *equal* to one of the listed impairments, [she] must present medical evidence which describes how the impairment has such an equivalency." *Bell*, 796 F.2d at 1353 (emphasis added).[2]  In all cases, the plaintiff bears the burden to prove with *medical evidence* that, prior to the expiration of her insured status, she satisfied or equaled the requirements of a listing. *Wilkinson o/b/o Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir.1987).  To succeed in her argument, Plaintiff must provide evidence that these impairments are "severe," constituting more than a "slight abnormality" and having more than a minimal impact on her ability to perform basic work activities.  *McDaniel v. Bowen*, 800 F.2d 1026, 1028 (11th Cir. 1986).

Here, the ALJ determined that Plaintiff's impairments do not meet the criteria for listing 1.02B.  (R. 18, No. 4) ("The medical evidence does not reflect involvement of one major peripheral joint in each upper extremity (i.e. shoulder, elbow or wrist-hand) resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.").  Plaintiff has pointed to no specific medical findings to support her contention that she has an impairment under 1.02B.  But even more importantly to her argument, she has presented no medical evidence that she has the equivalent medical findings to meet an applicable impairment for the effects of a stroke.  In fact, there is scant medical evidence in Plaintiff's file regarding her stroke.  On August 25, 2013 Plaintiff went to UAB

---

[2] Medical equivalence will be found when "the medical findings are at least equal in severity and duration to the listed findings." 20 C.F.R. § 404.1526(a). Medical equivalence is based upon medical evidence only, and "[a]ny medical findings in the evidence must be supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1526(b). The Supreme Court has held that: [f]or a claimant to qualify for benefits by showing that h[er] unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, [s]he must present medical findings equal in severity to all the criteria for the one most similar listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

8

due to pain from a fall. (R.826). While there, Plaintiff reported that she was experiencing some mild confusion and forgetfulness, along with slurred speech. (R.826). She reported no changes in vision, dyspagia, dizziness, changes in balance, or unilateral weakness/numbness of extremities. (R.826). She did, however, report that her insulin medications had recently been changed. (R.826). On September 17, 2013, Plaintiff was admitted to UAB for ischemic stroke. (R.853). The notes state that after treatment on admittance day, "her neurological symptoms largely resolved" with Plaintiff retaining "only a mild right facial droop the following day. ... The following day, she was able to ambulate well without assistance. ... Given that she had largely returned to her neurological baseline, she was deemed stable enough for discharge home with family." (R.857). However, while in the hospital an aneurysm was discovered and Plaintiff was recommended to have a carotid revascularization to reduce the risk of further strokes. (R.857). There is nothing else in the record, and Plaintiff has not pointed to anything else in the record, describing any residual effects from the stroke. (*See generally* Doc. #8). Therefore, to the extent that Plaintiff argues that the ALJ erred at Step Three, that argument fails.

At Step Four of the analysis, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work. (R.19, No. 5). Specially, the ALJ found as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is able to lift 15 pounds occasionally and frequently with the bilateral upper extremities; can never climb ladders, ropes, or scaffolds; may never reach overhead with the left, non-dominant upper extremity; must avoid all exposure to hazardous moving machinery and unprotected heights; and must avoid concentrated exposure to fumes, gasses, and poor ventilation.

(R.19, No. 5). Plaintiff argues that the RFC fails to address testimony on the effects she suffered post-stroke. (Doc. #8 at 11). "Where an applicant has multiple impairments, the ALJ considers the combined effect of all impairments without regard to whether any individual impairment would demonstrate disability." *Tuggerson-Brown v. Commissioner*, 572 Fed. Appx. 949, 951 (11th Cir. July 24, 2014). Although the argument is not fleshed out, Plaintiff appears to contend that the ALJ erred when she failed to articulate the subjective testimony as outlined in *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). But as the ALJ stated, she "has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p." (R.19, No. 5). Although the ALJ did not cite *Holt*, her "findings and discussion indicate that the standard was applied. Furthermore, the ALJ cite[d] to 20 CFR § 404.1529, which contains the same language regarding the subjective testimony that this court interpreted when initially establishing its three part standard." *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

Here, the ALJ noted that Plaintiff was hospitalized following an ischemic stroke on September 17, 2013. (R.17). As noted below, both the medical evidence and the ALJ decision indicate that before Plaintiff was released from the hospital on September 20, 2013, her neurological symptoms largely had resolved and she retained only a mild slight facial droop; she was able to ambulate well. (R.17, 857). Plaintiff was deemed stable for discharge and was recommended to follow up with her primary care physician, neurologist, and the stroke clinic. (R.17; Exh. 22F at 49). Plaintiff testified that she recovered "a good bit" from the stroke, with the residual effects of being tired, only being able to work in "little spurts," and having difficulty sleeping. (R.43-44, 46). Other

than these few sentences of testimony, there is absolutely nothing in the record to support a finding of severe residual stroke effects. As such, Plaintiff has failed to establish that she has an impairment that could reasonably be expected to produce the symptoms or limitations alleged. 20 C.F.R. §§ 404.1529(b), (c); SSR 96-7p at *5-6; *see also Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). That is, Plaintiff has done nothing to establish the "limitations" incident to her stroke. There is no objective medical evidence to substantiate that she experiences effects from the stroke. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). The ALJ did not err in failing to credit Plaintiff's testimony on the residual effects of the stroke.

As a corollary to her credibility argument, Plaintiff asserts that the ALJ erred by not addressing the VE's testimony that if Plaintiff indeed suffered from memory loss and/or fatigue, there would be no jobs available. (Doc. #8 at 13-14). Although the VE testified that Plaintiff would not be able to perform work if she suffered from being off task for 15% of the work day, the VE also testified that Plaintiff *would* be able to perform some past relevant work if she suffered from being off task for only 10% of the day. (R.64). Because the ALJ discredited Plaintiff's statements about memory loss and fatigue, there was no need for the ALJ to discuss this particular aspect of the VE's testimony, which would substantiate a finding against disability even if Plaintiff suffered only from a 10% decrease in memory loss and function. *See Ingram v. Commissioner*, 496 F.3d 1253, 1270 (11th Cir. 2007) (concluding that a hypothetical question need not include each and every symptom of claimant, and the ALJ properly omitted from hypothetical question symptoms the claimant alleged to suffer but were not supported by the medical record); *Crawford v. Commissioner*, 363 F.3d 1155, 1161 (11th Cir. 2004) (concluding that "the ALJ was not required to include findings in the

hypothetical that the ALJ had properly rejected as unsupported"). For these reasons, the ALJ did not err by failing to address the VE's response to a hypothetical question.

## VI. Conclusion

For the reasons stated above, the court concludes that the Commissioner's findings are supported by substantial evidence, correct legal standards were applied, and her final decision is due to be affirmed. A separate order will be entered.

**DONE** and **ORDERED** this \_\_\_22nd\_\_\_ day of March, 2016.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE